## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 29 2016, 6:29 am

CLERK
of the supreme court, court of appeals and tax court

ATTORNEY FOR APPELLANT

Christopher J. Petersen
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Steven A. Bird,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 29, 2016

Court of Appeals Case No.
20A03-1503-CR-88

Appeal from the
Elkhart Superior Court

The Honorable
Evan S. Roberts, Judge

Trial Court Cause No.
20D01-1402-FD-146

**Kirsch, Judge.**

[1]     Following a jury trial, Steven A. Bird was convicted of Class D felony auto theft, Class D felony domestic battery in the presence of a child, and Class A

misdemeanor invasion of privacy. He now appeals the auto theft conviction,[1] claiming that the State failed to present sufficient evidence to convict him.

[2] We affirm.

## Facts and Procedural History

[3] Cassandra Bird ("Wife") and Bird married in 2011. They have one daughter, C.B. At the end of October 2013, Wife left Bird, moved into her parents' home, and brought C.B. with her. Prior to the separation, in or around the summer of 2013, Wife's car broke down, and her parents gave her permission to use their 1997 Geo Prism ("the Car"). While Wife and Bird were together, Wife sometimes allowed Bird to drive the Car. However, after Wife moved out in 2013, she no longer allowed Bird to use the Car. At no time did Wife's parents give Bird permission to use the Car. In fact, Wife's father, David Williams ("David"), specifically told Bird that he was not allowed to "touch[] my property," which included the Car. *Tr.* at 312.

[4] Around 10:00 p.m. on February 14, 2014, Bird went to Wife's place of employment to drop off C.B., following Bird's exercise of visitation with her. Bird was waiting in his car in the parking lot, and C.B. was with him.[2] Bird

---

[1] *See* Ind. Code § 35-43-4-2.5(b). We note that, effective July 1, 2014, the Indiana General Assembly enacted a new version of this criminal statute. Because Bird committed his offenses in February 2014, we apply the statute in effect at that time.

[2] Upon separation, Wife had obtained a protective order against Bird. Among other things, the protective order required that Bird's parenting time with C.B. be supervised. *State's Ex.* 17. During most previous visitation exchanges, Bird's uncle was present. However, this time, Bird was alone with C.B. in the Car.

texted Wife before she left work and told her that his car had a flat tire and was out of gasoline, and he "begged" Wife for a ride to his cousin's apartment; Wife saw the flat tire and agreed to give Bird a ride. *Id*. at 442.

[5] When they arrived at the apartment, Bird refused to get out of the Car, and he attempted to talk to Wife about the separation and protective order. Wife did not want to discuss it, particularly with C.B. asleep in the back seat. Bird argued with Wife, and C.B. woke up and began to scream. Bird then grabbed Wife's head and shoved it against the interior wall of the Car where the plastic cover to the seat belt was located. After that, Wife saw that Bird had what appeared to her to be a hunting knife, which he held to her chin. Bird laughed and said he was going to slit her throat. Wife grabbed the knife and threw it out the window, which was cracked open. Bird then opened the car door and pushed and kicked Wife out of the Car. He then drove away with C.B. in the back seat.

[6] Wife began walking to find help. It was very cold outside, and Wife was without a coat. She attempted to gain assistance at a couple of locations, unsuccessfully, and as she walked, Bird periodically returned in the Car. He would "leave and come back and . . . leave and come back[.]" *Id*. at 454. One time, he got out of the Car and poured bottles of water on her; other times, he threatened her, and at one point, Bird drove the vehicle onto the sidewalk, opened the car door, and hit Wife in the stomach. He continued to drive away and return, making threats and attempting to injure Wife. He threw her in a snowbank, slapped her, and hit her leg with the Car. He continued to follow

Wife and scream at her. He would not allow Wife to take C.B. out of the Car. Wife eventually arrived at her parents' home and called 911. Police later located Bird, who was sitting in the driver's seat of the Car, while it was running and parked in an alley, and the officer arrested him.

[7] The State charged Bird with Count I, Class D felony domestic battery in the presence of a child; Count II, Class D felony auto theft; and Count III, Class A misdemeanor invasion of privacy. A jury trial was held, and Bird appeared by counsel, but failed to appear in person. Wife testified that, because her car was "broken down," her parents had given her permission to drive the Car. *Tr.* at 437. She conceded that, "when things were good" between Bird and her, she let him drive the Car, but she did not let him use it after she sought and obtained the November 2013 protective order. *Id.* Wife explained that there was one occasion, sometime after November 2013, when she left the Car at Bird's aunt's home, where C.B. was having visitation with Bird. Wife told the aunt that only she could use the Car, if necessary, while Wife was at work, but that Bird was not allowed to drive it.

[8] Wife's father, David, also testified. He stated he and his wife gave Wife permission to use the Car, but at no time did they ever give Bird permission to use it. David stated that Bird "knew he didn't have my permission to drive that car," because David had told Bird, while the two of them were at some point discussing a "situation" involving the Car, that "I didn't want him touching my property." *Id.* at 312.

The jury found Bird guilty as charged. He now appeals the auto theft conviction.

## Discussion and Decision

Bird's sole argument on appeal is that the evidence was insufficient to support his auto theft conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility, considering instead only the evidence supporting the conviction and any reasonable inferences that the factfinder may have drawn from that evidence. *Donovan v. State*, 937 N.E.2d 1223, 1224 (Ind. Ct. App. 2010), *trans. denied*; *Gonzalez v. State*, 908 N.E.2d 338, 340 (Ind. Ct. App. 2009). We will affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Donovan,* 937 N.E.2d at 1224. Circumstantial evidence alone may support a conviction if inferences may reasonably be drawn that allowed the jury to find the defendant guilty beyond a reasonable doubt. *Gonzalez*, 908 N.E.2d at 340.

To convict Bird of Class D felony auto theft, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally exerted unauthorized control over the motor vehicle of another person, with intent to deprive the owners of the vehicle's value or use. Ind. Code § 35-43-4-2.5(b). Here, Bird was charged with "knowingly exert[ing] unauthorized control over the motor vehicle of . . . David Williams, with the intent to deprive David Williams of value or use of said vehicle." *Appellant's App*. at 14. Bird contends

on appeal that the evidence was insufficient to convict him, claiming that because in the past he had driven the Car, he did not exert "unauthorized control" when he forced Wife out of the Car and drove away with it. He also claims that because he took the Car from Wife, who was borrowing the Car from her parents, the owners were not deprived of its use or value. We are not persuaded by either argument.

[12] On the night in question, Wife was using the Car with her parents' permission. At no time had her parents given Bird permission to use the Car. In fact, David had told Bird that he was not to touch his property, which included the Car. By pushing Wife out of the Car against her will, and driving away with it, Bird clearly exerted unauthorized control over the Car, which he knew was owned by Wife's parents. Bird notes that Wife, in the past, sometimes allowed him to drive the Car, and he suggests that those "instances of authority to use the vehicle" constituted authorization for him to use it on the night in question. *Appellant's Br*. at 5. However, whether he sometimes drove the Car prior to the parties' separation in October 2013 is neither relevant nor determinative as to whether he exercised unauthorized control over it in February 2014, which was well after the parties' separation and after Wife had obtained a protective order against him.

[13] Bird also asserts that, because Wife was borrowing the Car, "only [Wife] could be said to have been deprived of [the] use or value[.]" *Id*. Stated differently, he argues, "[T]he owners deprived themselves of the use of and value of [the Car] by lending the car to [Wife]." *Id*. We reject this claim. Wife was the

authorized user of the Car pursuant to the owners' express permission; her permissive use was not the equivalent of deprivation of its use or value. Moreover, as the State points out, "To support a theft conviction, the State is not required to prove ownership 'in the title sense.'" *State's Br*. at 8-9 (citing *Raines v. State*, 514 N.E.2d 298, 299 (Ind. 1987)). Rather, it is sufficient "if the evidence shows the alleged owner to be properly in possession[.]" *Id*. We recognize that *Raines* was addressing our theft statute, not the auto theft statute, but as the language of the statutes is virtually identical, it follows that the same reasoning applies in the auto theft context. *See Girdler v. State*, 932 N.E.2d 769, 771 (Ind. Ct. App. 2010) (recognizing that because language of theft and auto theft statutes is virtually identical, there was "no reason why a different rule of law would apply to theft/receiving stolen property as would apply to auto theft/receiving stolen auto parts"). Here, Wife was properly in possession of the Car pursuant to the owners' permission, Bird forcefully took it from her, and he thereby deprived the owners of its use or value. The evidence is sufficient to sustain Bird's conviction for auto theft.

[14] Affirmed.

Mathias, J., and Brown, J, concur.